UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-14005-Moore/McCabe

STEPHEN PATRICK YOUNG,

    Plaintiff,

v.

HIGHLANDS COUNTY,
STEVEN RITENOUR,
GARRET ROBERTS, and
ANGELA J. COWDEN,

    Defendants.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiff's *pro se* Application to Proceed *In Forma Pauperis* ("Application") (DE 3). By way of previous Report and Recommendation ("R&R"), the undersigned recommended that Plaintiff be deemed indigent for purposes of 28 U.S.C. § 1915(a)(1) but found that Plaintiff's Complaint failed to state plausible claims for which relief may be granted for purposes of 28 U.S.C. § 1915(e)(2)(B) (DE 8). The undersigned therefore recommended that Plaintiff be afforded the opportunity to submit an Amended Complaint, which Plaintiff did on January 29, 2024 (DE 12). Thereafter, on February 13, 2024, United States District Judge K. Michael Moore adopted the R&R as to indigency and deferred ruling on the reminder of the Application, pending a merits review of the Amended Complaint by the undersigned (DE 13). Having completed this review, the undersigned **RECOMMENDS** that the Application be **DENIED.**

**I.     BACKGROUND**

The Amended Complaint alleges civil rights violations against four defendants: (1) Highlands County, (2) Angela J. Cowden, a Florida state court judge, (3) Garret Roberts, an attorney for the Highlands County Sheriff's Office ("HCSO"), and (4) Steven Ritenour, an HCSO Deputy (DE 12). The allegations revolve around a state court "red flag" proceeding brought against Plaintiff pursuant to Fla. Stat. § 790.401 – the Florida state law that allows law enforcement officials to obtain a Risk Protection Order ("RPO") that restricts firearm possession by persons deemed to be a danger to themselves or others. Plaintiff alleges additional civil rights violations in connection with a perjury arrest made by Deputy Ritenour following Plaintiff's in-court testimony concerning the RPO.

Plaintiff alleges the following timeline of events, which the Court accepts as true. On or about September 13, 2019, Deputy Ritenour served an RPO on Plaintiff by arranging to have it included among his personal belongings as he departed the Highlands County Jail (DE 12 at 7). According to the Amended Complaint, Deputy Ritenour's attempt to serve the RPO failed to comply with the RPO statute in multiple respects, including: (1) the RPO lacked an official court seal, (2) the RPO was not accompanied by a summons, (3) the RPO was not accompanied by the petition that initiated the RPO, and (4) the RPO contained a forged electronic signature of the state court judge who allegedly issued it, Judge Robert Griffin (DE 12 at 7).

Thereafter, on September 27, 2019, Plaintiff attended a court hearing concerning the RPO, with Judge Angela Cowden presiding (DE 12 at 9). Plaintiff moved to dismiss the proceedings based on improper service, but Judge Cowden wrongly denied the motion and continued the hearing for another date (DE 12 at 9).

On October 28, 2019,[1] Plaintiff appeared again before Judge Cowden for an evidentiary hearing on the RPO (DE 12 at 9). Plaintiff represented himself *pro se* during this hearing, while Attorney Roberts represented HCSO, the law enforcement entity that requested entry of the RPO (DE 12 at 9). During the hearing, Judge Cowden and Attorney Roberts forced Plaintiff to take the witness stand to answer questions even though Plaintiff attempted to invoke his Fifth Amendment rights (DE 12 at 9). Plaintiff also attempted to make objections to Attorney Roberts' questions, but Judge Cowden refused to allow him to do so, claiming witnesses cannot make objections (DE 12 at 9).

As Plaintiff exited the courtroom following the October 28 hearing, Deputy Ritenour arrested Plaintiff on two counts of perjury, stemming from his in-court testimony during the hearing (DE 12 at 10). The Amended Complaint does not explain the exact statements that allegedly constituted perjury, nor does it explain whether the State Attorney thereafter brought formal charges against Plaintiff for perjury, or whether Plaintiff ultimately prevailed on those charges.

The Amended Complaint does allege, however, that Plaintiff appealed the RPO proceeding, and that he prevailed on this appeal (DE 12 at 9-10). Specifically, Plaintiff alleges that he appealed the RPO on November 22, 2019, and that in response to the appeal, HCSO filed a "Concession of Error," resulting in the RPO being vacated (DE 12 at 9-10). The Amended Complaint does not explain the basis of the error.

Plaintiff further alleges that, as a result of Defendants' actions, he suffered damages, including extreme embarrassment, shame, anxiety, and mental distress (DE 12 at 10). He seeks

---

[1] The Amended Complaint alleges a date of October 28, *2018* (DE 12 at 9). The Court assumes this to be a scrivener's error and that Plaintiff meant to allege "2019."

relief pursuant to 42 U.S.C. § 1983, alleging that Defendants' actions constituted violations of the First, Fourth, Fifth, and Fourteenth Amendments, as well as state and federal statutes relating to perjury and forgery of public documents (DE 12 at 4-5).

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1915(e)(2)(B), this Court must conduct an initial screening of the merits of Plaintiff's Amended Complaint. Under the screening standard, the Court must dismiss any case that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i-iii). The standard for failure to state a claim mirrors the standard set forth in Fed. R. Civ. P. 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To survive dismissal, therefore, a complaint must provide "more than labels and conclusions," and must instead allege facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As a general rule, courts hold *pro se* pleadings to a "less stringent standard than pleadings drafted by attorneys." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Courts have no obligation, however, to "re-write" a *pro se* complaint in order to find a claim. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

The Amended Complaint here alleges claims under 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States. To state a viable § 1983 claim, Plaintiff must allege facts showing (1) a violation of a constitutional right, (2) committed by a person acting under color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). For the reasons

set forth below, the Court finds the Amended Complaint fails to state any plausible claim for relief. The Court will address each Defendant in turn.

### A. Highlands County

The Amended Complaint first brings a claim against the municipality of Highlands County. In *Monell v. Department of Social Services*, 436 U.S. 658, 689 (1978), the Supreme Court recognized that municipalities qualify as "persons" subject to suit under § 1983. To demonstrate liability against a municipality, however, a plaintiff must do more than merely show the municipality employed a person who committed a constitutional violation, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691. "[A municipality] is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the [municipality] itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

Accordingly, the Supreme Court has defined three very narrow circumstances under which a municipality can be held liable under § 1983. First, *Monell* recognizes that § 1983 liability attaches when the municipality itself adopts a formal policy, rule, or regulation that causes constitutional violations. 436 U.S. at 658. In *Monell*, for example, the municipality adopted a formal policy that required pregnant employees to take unpaid maternity leave before such leave was medically necessary. *Id.* at 660-61. As such, the municipality had adopted a formal policy that served as the "moving force" for a constitutional violation inflicted on its female employees. *Id.* at 694-95.

Second, *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decision making channels." *Id.* at 690-91 (cleaned

5

up). To prove a custom or practice, a plaintiff must establish a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up). As the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Mary's, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) (noting that, in an excessive force case, "the plaintiff must allege a pattern of excessive force including specific facts of numerous incidents" demonstrating "a widespread practice") (cleaned up).

Third, the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to § 1983 liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. To show "deliberate indifference" in a failure to train/supervise case, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a *Monell* failure to train/supervise theory. *Id.* at 1351 (citing cases).

In this case, the Amended Complaint fails to allege facts sufficient to demonstrate municipal liability under any recognized theory of *Monell* liability. The Amended Complaint fails to identify any official policies, or informal customs or practices, or alleged failure on the part of Highlands County to train or supervise, which caused a constitutional violation to take place. Plaintiff cannot hold Highlands County liable under § 1983 merely because its agents or employees

committed constitutional violations against him. Instead, Plaintiff must allege facts sufficient to show the municipal entity itself caused the violations by way of one of the recognized theories of *Monell* liability. The Amended Complaint does not meet this demanding standard and therefore fails to state a plausible claim as to Highlands County.

>   **B.     Judge Cowden**

The Amended Complaint next seeks relief against Judge Cowden, a Florida state court judge. Under the law, judges enjoy absolute immunity from liability for damages for acts committed within their judicial jurisdiction. *See Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017) (noting that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction") (cleaned up). "This absolute immunity is intended for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* (cleaned up). Judicial immunity applies "even when the judge's conduct was in error, was done maliciously, or was in excess of his authority...." *Id.* (cleaned up). Although "[a] judge's errors may be corrected on appeal … [he or she] should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." *Id.* (cleaned up).

The Amended Complaint here alleges that Judge Cowden improperly ruled against Plaintiff on motions related to service of the RPO, that she improperly ordered him to testify even after he invoked his Fifth Amendment rights, and that she improperly refused to allow him to make objections to Attorney Roberts' in-court questions (DE 12 at 9). These acts fall squarely within the scope of Judge Cowden's official judicial duties. As such, Judge Cowden cannot be held liable for damages, even if she decided the motions wrongly, even if she was overturned on appeal, and

7

even if she acted with malice or corrupt intent. The Court therefore finds that the Amended Complaint fails to state a plausible claim against Judge Cowden.

      **C.    Attorney Roberts**

The Amended Complaint next seeks relief against Garrett Roberts, who acted as counsel for HCSO during court proceedings related to the RPO. Based on the allegations, the Court finds that Attorney Roberts acted as a prosecutor or quasi-prosecutor because he represented an agency of the State, i.e., the HCSO, in an action to enforce state law, i.e., the RPO statute. *See Stevens*, 877 F.3d at 1302 (noting that courts use a "functional approach" to determine whether a given government official enjoys absolute immunity); *Hart v. Hodges*, 587 F.3d 1288, 1294-95 (11th Cir. 2009) (noting that the functional approach "looks to the nature of the function performed, not to the identity of the person who performed it").

As a general rule, attorneys who act as prosecutors enjoy absolute immunity from suit for actions taken in their role as "an advocate for the state." *Hart*, 587 F.3d at 1295. Prosecutorial immunity is so potent that "even if [a prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial, he [or she] is entitled to absolute immunity from liability for doing so." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002).

The Amended Complaint here alleges that Attorney Roberts called Plaintiff to the witness stand during a court hearing, that he continued to ask Plaintiff questions even after Plaintiff invoked his Fifth Amendment rights, and that he thereafter gave advice or counsel to Detective Ritenour relating to Plaintiff's perjury arrest following the in-court testimony (DE 12 at 9-10). These acts fall squarely within the scope of Attorney Roberts' prosecutorial or quasi-prosecutorial duties. As such, Attorney Roberts cannot be held liable for damages, even if he violated Plaintiff's

constitutional rights and even if he did so with malice or corrupt intent. The Court therefore finds that the Amended Complaint fails to state a plausible claim against Attorney Roberts.

### D. Deputy Ritenour

As to Deputy Ritenour, the Amended Complaint alleges two types of claims: (1) those pertaining to service of the RPO, and (2) those pertaining to the perjury arrest. The Court will address each in turn.

#### 1. Claims Related to Service of the RPO

First, the Amended Complaint alleges that Deputy Ritenour's attempt to serve the RPO failed to comply with the RPO statute in multiple respects, including: (1) the RPO lacked an official court seal, (2) the RPO was not accompanied by a summons, (3) the RPO was not accompanied by the petition that requested the RPO, and (4) the RPO carried a forged electronic signature of Judge Robert Griffin (DE 12 at 7). The Court finds these allegations insufficient to state a plausible § 1983 claim for two reasons.

First, law enforcement personnel who carry out, execute, or serve court orders enjoy quasi-judicial immunity for ministerial acts performed within the scope of their official duties. *See People ex rel. Giles v. Thomas*, 464 F.2d 156, 159-60 (5th Cir. 1972) (finding immunity for sheriff deputies who executed a court order of eviction). Liability can attach only when the officer goes beyond the ministerial duties required by the court order. *See Cortez v. Close*, 101 F. Supp. 2d 1013, 1016-17 (N.D. Ill. 2000) (finding viable § 1983 claim where deputy sheriffs exceeded the scope of an eviction order by searching premises, kicking in bedroom doors, and placing a gun to the head of one of the residents). The Court finds Deputy Ritenour enjoys quasi-judicial immunity from liability for technical deficiencies in service such as the lack of an official court seal or the lack of an accompanying summons or petition.

9

Second, as to the claim that the RPO contained a forged electronic signature of Judge Robert Griffin, the Amended Complaint contains insufficient factual detail to state a claim against Deputy Ritenour. Plaintiff does not allege, for example, that Deputy Ritenour created the forgery, nor does it allege that he was aware of the forgery. Without such supporting facts, the Amended Complaint cannot state a plausible § 1983 claim.

### 2. Claims Related to Perjury Arrest

Finally, the Amended Complaint alleges that Deputy Ritenour improperly arrested Plaintiff for perjury as he exited the courtroom following the RPO hearing on October 28, 2019 (DE 12 at 10). The Court interprets this as a false arrest claim in violation of the Fourth Amendment, which provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. An arrest made without probable cause violates the Fourth Amendment and gives rise to a viable claim under 42 U.S.C. § 1983. *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). In the arrest context, "probable cause" exists "when law enforcement officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed or was committing a crime." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).

The Court finds Plaintiff's allegations insufficient to state a plausible false arrest claim for three reasons. First, the Amended Complaint, like the initial Complaint, continues to fail to set forth sufficient factual detail to assess the existence or non-existence of probable cause. Plaintiff does not explain the basis of the alleged perjury arrest. Presumably, he testified in a manner that law enforcement believed to be false. What was the testimony? What were the facts and circumstances showing the testimony was true rather than false? Without these additional facts, Plaintiff cannot state a plausible claim of false arrest.

Second, the Amended Complaint does not explain what happened following the arrest. Did the State Attorney bring charges against Plaintiff for perjury? If so, is the case still ongoing? If the perjury case concluded, how did it conclude? Who won? These facts carry great significance to Plaintiff's § 1983 claim. *See Doby v. Strength*, 758 F.2d 1405, 1405–06 (11th Cir. 1985) (instructing the district court to abstain, pursuant to *Younger v. Harris*, 401 U.S. 37, 44 (1971), from deciding the merits of plaintiff's § 1983 claims until the conclusion of ongoing, related state court criminal proceedings); *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (noting that "when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated").

Third, even if the arrest lacked probable cause, and even if Plaintiff subsequently prevailed on any perjury-related prosecution that followed, Plaintiff would still need to allege facts to overcome qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (cleaned up). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the

11

lawsuit as possible." *Id.* "Qualified immunity is the rule, not the exception." *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998).

To overcome qualified immunity in a false arrest case, a plaintiff must do more than show a lack of probable cause. A plaintiff must show the defendant lacked "arguable probable cause" to make the arrest. *See Moreshead v. Ott*, No. 08-80913, 2009 WL 5083425, at *4 (S.D. Fla. Dec. 23, 2009) ("Since [Deputy] Ott was performing a discretionary function, the burden shifts to Plaintiff to demonstrate that Ott violated clearly established constitutional law, *to wit*, an arrest without arguable probable cause.") (emphasis original); *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause.").

Arguable probable cause exists where a reasonable officer in the same circumstances and possessing the same knowledge as the defendant "could have believed" that probable cause existed to make the arrest. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Courts apply this standard because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Id.* (cleaned up); *see also Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (noting that qualified immunity standard is broad enough to cover mistaken judgment). Like probable cause, arguable probable cause must be measured objectively, without regard to the officer's subjective intent or belief. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

The Amended Complaint here fails to allege sufficient facts to meet this standard. Plaintiff fails to describe how or why law enforcement lacked probable cause, let alone "arguable probable cause" to make an arrest for perjury. For this reason as well, the Court finds the Amended Complaint fails to state a plausible § 1983 claim.

### III.  RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Accordingly, this Court **RECOMMENDS** that Plaintiff's Application to Proceed *In Forma Pauperis* (DE 3) be **DENIED**.  Given that Plaintiff has already been afforded an opportunity to amend his claims, the Court recommends no further opportunities to amend.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge K. Michael Moore.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 12th day of March 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE

cc:  counsel of record; Plaintiff, *pro se*.

13